## In re Assignment of John B. and Edward Purcell.

*Compensation of trustees of insolvent estate.*

An allowance of $2,700, or three per cent., on $90,000, the amount collected and accounted for by trustees of an insolvent estate, held a reasonable compensation for extraordinary services.

This does not include expenses for clerk hire, office rent, or attorneys' fees.

*Decided May* 4, 1888.

THIS was an application made on behalf of Isaac J. Miller and Gustav Tafel for an allowance of $20,000 for extraordinary services as trustees.

*S. A. Miller* and *Gustav Tafel*, for trustees.

GOEBEL, J.

The application is made under section 6357 of the Revised Statutes, which provides in substance that the assignee or trustee of an insolvent estate may be allowed the following commissions upon the amount of the personal estate collected and accounted for by him, and of the proceeds of the sale of real estate sold under the order of court for the payment of debts, which shall be received in full compensation for all his ordinary services; that is to say, for the first thousand at the rate of six per centum; for all above that sum and not exceeding five thousand, at the rate of four per centum; and of all sums above five thousand, two per centum. And in all cases such further allowance shall be made as by the court, shall be considered just and reasonable for any extraordinary services not required of an assignee or trustee in the course of his duties.

In England a trustee can have no allowance or compensation for his time and trouble in the execution of his trust. The principle upon which this rule

is founded is that a trustee can make no profit out of his office; and the reason of the principle is, that a trustee shall not be placed in a position where his interest may be opposed to his duty; and this rule applies not only to trustees but to all who hold fiduciary relations. *Perry on Trusts*, sec. 904.

Chancellor Kent said, in *Manning* v. *Manning*, 1 Johns (N. Y.) Ch. 534: "Nor does the rule strike me as so very unjust or singular and extraordinary, for the acceptance of every trust is voluntary and confidential. * * * I should think it could not have a very favorable influence on the prudence and diligence of a trustee were we to promote, by the hopes of reward, a competition, or even a *desire* for the possession of private trusts that relate to the moneyed concerns of the helpless and infirm. To allow wages or commissions for every alleged service, how could we prevent abuse?"

And Justice Story remarked, that the policy of the law ought to be such as to induce honorable men to accept the office, and to take away the temptation to abuse the trust for mere selfish purposes, as being the only indemnity for services of an important character.

This was the rule in this country for many years, but now in many of the States the legislatures have enacted laws providing competent remuneration for those to whom the law commits trust estates; yet, as

a general principle of equity, no rule can be more salutary, and none is more universally recognized, than that a trustee shall not profit by his trust. At this day, when it so far denies a reasonable compensation for his services, it ought not to have any application. Yet we must not lose sight of the principle of the rule; although the rule itself has been abrogated by statute, the danger still remains; and in fixing compensation this must ever be borne in mind, and we should not deviate further from it than absolute justice requires.

The legislature of Ohio, in its wisdom, has seen fit to fix a certain percentage to which the assignee or trustee is entitled upon the moneys received and accounted for by him; this to be in full for all ordinary services. It further provided that the court may allow reasonable compensation for any extraordinary service not ordinarily required of an assignee or trustee.

Two questions arise, Did the trustees render extraordinary services, or did they render such services for which an extra allowance may be made? Secondly, If so, what would be a reasonable compensation for such services? The question, "What are extraordinary services, or services not usually required of an assignee in the ordinary course of his duties?" is a subject upon which there has been much difference of opinion.

Let us examine the case before us. These trustees were appointed on the 4th day of January, 1886, and were then placed in charge of, perhaps, the most extraordinary assignment on record, disastrous in the extreme at the time of its inception, and rendered more so, if possible, by the maladministration of the first assignee. There was little or no property turned over to these trustees by their predecessor, but what remained of the estate must of necessity be made out of the bondsmen of their predecessor, and out of such other more or less important matters as had not yet received their attention.

The principal source of income to the present trustees proved to be derived from one of the bondsmen of the former assignee whose obligation was cancelled by the payment of $54,500. The next most important realization of money by the trustees was from the sale of certain stocks held by the same bondsman, and turned over by him, amounting to $19,000.

The other items of income to the trustees were not numerous nor large in amount, nor were any of them the product of extraordinary exertions, or protracted or difficult litigation. But from all sources there came into the hands of the trustees the sum of $90,-000, during the period of eighteen months, for which time compensation is asked.

It must be conceded that the information at hand both as to the assets of the estate, as well as the

identity and numbers of creditors at the time of the appointment of the trustees, was most discouraging. No books had been kept by the former assignee, giving information either as to the sums that came into his hands, or as to the creditors who had forwarded their claims; and only the most meager and irregular memoranda and data were at the disposition of the trustees, out of which they could work the problems of this estate.

To these discouragements must be added, as none of the least, the misgivings naturally born of the dissatisfaction growing out of the former history of these estates.

With commendable energy and systematic business tact, the trustees began their labors, ascertaining the name and residence of every creditor of the estate—the number reaching 3,200—taking proof of every claim, aggregating in amount the sum of $3,729,331. All of this, it is readily apparent, involved a vast amount of intelligent labor. They opened appropriate and practically arranged books of account, both with the estate and creditors, and in every way gave prompt, energetic and intelligent attention to the administration of the estate confided to their care.

In determining these questions, the nature and condition of the estate assigned, the character and condition of the assets, as well as the number and

character of claims presented for allowance, are proper subjects for consideration. The estates before us are in every view extraordinary, entailing in their proper administration from the very inception of the trust to the filing of the final account, services of an extraordinary character, for which the statutory compensation fixed for ordinary services would be inadequate. Yet we do not find that the extraordinary services here rendered are of that difficult and intricate character as to call for the allowance asked. The services here rendered are extraordinary in their extent rather than in their character. We have not time to go into details, but they were fully considered.

Holding therefore, that these trustees have rendered services which are not covered by the statutory compensation, what are such services reasonably worth? The law has fixed no certain compensation; but, as the legislature has regulated by per centage, the amount of compensation to be paid to assignees and trustees for ordinary services, why may we not, by an equitable construction, extend the provisions to assignees and trustees for extraordinary services rendered by them? We do not say that this rule should be applied in every case, but it is the duty of the court to look at the facts of each case, and on consideration of all the circumstances, determine what may be a fair compensation, and then, if such case will permit the adoption of the rule, the court may

Assignment of John B. and Edward Purcell.

do so.  And this rule has been adopted in many of the States where the fixing of compensation is left to the discretion of the court.  A careful examination of the authorities of the several States satisfies us that the average allowance in such cases is three per cent., upon the amount received.

We think in this case we can in justice apply the rule.  These comments are not made for the purpose of underrating or in any way disparaging what the trustees have done.  They have administered their trust honestly and successfully.  And in making this allowance, we have not considered the expenses for clerk hire, office rent, nor attorney's fees, for which, from the evidence in this case, they are entitled to charge.  Nor do we think that the number of trustees should make any difference in the rate of commission. If one has rendered more service than the other, they should do justice among themselves by assigning to each a share of the whole allowance, proportionate to his trouble, or if they should divide it equally, it is their own concern.

The claim for $20,000, will be disallowed and they will be allowed the sum of $2,700, being three per cent., on $90,000, the amount collected and accounted for by them.

NOTE.—On appeal the Common Pleas Court increased the allowance.